1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7   ANDREW MARSHALL, and all
    others similarly situated,

8                                                NO:  11-CV-0022-TOR
                         Plaintiff,

9                                                ORDER DENYING CLASS
                                                 CERTIFICATION
            v.

10

11  BONDED ADJUSTMENT
    COMPANY, a Washington
12  Corporation, and SPOKANE
    EMERGENCY PHYSICIANS, P.S., a
    Washington Corporation,

13
                         Defendants.

14

15          BEFORE THE COURT is Plaintiff's Motion for Class Certification. ECF

16  No. 73.  Also before the Court is Plaintiff's Motion to Compel Production of

17  Documents in Response to Plaintiff's Second Set of Requests for Production, ECF

18  No. 82, and Plaintiff's Motion to Extend Class Certification Deadline, ECF No. 79.

19  This matter was heard with oral argument on July 11, 2012.  Scott M. Kinkley,

20  Michael D. Kinkley and Kirk D. Miller appeared on behalf of the Plaintiff.  Jeffrey

ORDER DENYING CLASS CERTIFICATION ~ 1

I. Hasson appeared on behalf of Defendant Bonded Adjustment Company. Troy Y. Nelson and Jenaé M. Ball appeared on behalf of Defendant Spokane Emergency Physicians.  The Court has reviewed the motions, the responses, and the replies, and is fully informed.

BACKGROUND

On January 18, 2011, Plaintiff Andrew Marshall ("Marshall") filed a putative class action complaint alleging that Defendants Bonded Adjustment Company ("Bonded") and Spokane Emergency Physicians ("SEP") violated the Fair Debt Collection Practices Act ("FDCPA") and the State of Washington Collection Agency Act ("WCAA") by misrepresenting and attempting to collect more than the amount Marshall owed on his debt, and using unfair or unconscionable means to collect the debt.  Additionally, Marshall alleged that Bonded's violation of the WCAA was a per se violation of the Washington State Consumer Protection Act ("WCPA") which requires collection agencies to abstain from unfair or deceptive practices and unfair methods of competition.  Marshall claimed that Bonded and SEP violated WAC 296-20-020 by attempting to collect from a City of Spokane worker on medical bills for services rendered for an "accepted industrial injury."

Marshall now seeks certification of a class consisting of "[a]ll employees of the City of Spokane; against whom Defendants sent a bill, dunning letter, filed

lawsuit, or otherwise collected or attempted to collect any amount of money; [t]hat

was based on medical treatment provided to a City of Spokane employee; in

violation of WAC 296-20-020."[1]  ECF No. 73 at 2.  Defendants SEP and Bonded

oppose class certification because the putative class does not meet the numerosity

requirement under FRCP 23(a)(1), because a large number of the putative class

members were not, in fact, injured on the job and the statute of limitations bars

claims by certain putative class members.  ECF No. 109.  Bonded also opposes

class certification on the grounds that Marshall does not have a valid FDCPA cause

of action, Marshall does not have a valid WCPA cause of action, the proposed

class lacks commonality, Marshall's cause of action is not typical of the cause of

action of any class members, and Marshall has not satisfied the superiority

requirements for class certification.  ECF No. 100.

Marshall also moved to compel production of the medical records of 23

individuals identified through discovery as City of Spokane employees who were

treated by SEP and billed by Bonded, in order to determine if they were actually

---

[1] The complaint filed by Marshall identifies this putative class as a "subclass" of a larger statewide class.  ECF No. 1 at 11.  However, Marshall's Motion for Class Certification only seeks the "subclass" to be certified. The Court therefore declines to address certification of a putative statewide class.

ORDER DENYING CLASS CERTIFICATION ~ 3

injured on the job and therefore qualify as putative class members.  ECF No. 82 and 85.  In anticipation of the time necessary to review these documents, Marshall asks for an extension of the class certification deadline.  ECF No. 79.

If all of these 23 individuals qualify as putative class members, Marshall estimates a maximum class size of 25 members.[2]  ECF No. 77 at 8.  For the reasons discussed herein, the Court will presume, *arguendo*, that the putative class could consist of 25 members, all of whom were City of Spokane employees injured on the job, treated by SEP, and billed by Bonded.

## FACTS

The undisputed facts show that on June 19, 2008, Plaintiff Marshall sustained a minor injury to his eye while performing job duties for the City of Spokane.  ECF No. 77 at 2.  As a City of Spokane employee, Marshall is covered by the City of Spokane's self-insurance program for injuries sustained on the job. *Id*.  Marshall's supervisor drove him to Sacred Heart Medical Center in Spokane,

---

[2] Albeit without the benefit of providing full disclosure to the Plaintiff and thereby testing the evidence with our adversarial system of justice, Defendant Bonded persuasively argues that there are no more than four potential class members.  ECF No. 100 at 23-24.  Likewise, Defendant SEP convincingly argues there are no more than eight potential class members.  ECF No. 109 at 12.

ORDER DENYING CLASS CERTIFICATION ~ 4

1    Washington for treatment, whereupon Marshall disclosed to the Medical Center

2    that he was an employee of the City of Spokane and that he was injured while on

3    the job.  ECF No. 77 at 3.  Defendant SEP provides emergency care to patients at

4    Sacred Heart Medical Center's Emergency Department.  ECF No. 109 at 2.  The

5    total bill for medical treatment by SEP was $196.00.  ECF No. 100 at 4.  On July 3,

6    2008, SEP billed the City of Spokane through Marina Medical Billing Service, Inc.

7    ("Marina"), a company who provides medical billing services for SEP.  ECF No.

8    100-2, at 5

9         On November 18, 2008, the City of Spokane <u>denied</u> SEP's claim for

10   reimbursement. ECF No. 100 at 4.  In December of 2008 and January of 2009,

11   Marina, on behalf of SEP, sent a bill directly to Marshall because the medical

12   claim was denied by the City of Spokane.  *Id*.  After receiving no payment from

13   Marshall, SEP assigned the claim against Marshall to Bonded.  *Id*.  Bonded sent

14   notices to Marshall demanding payment of the claim, but was unable to

15   communicate with Marshall. ECF No. 100 at 5.  Marshall alleges that Bonded

16   "began a series of telephone calls and dunning letters via US Mail."  ECF No. 77 at

17   3.  After failing to collect from Marshall, Bonded filed a civil complaint in

18   Washington State District Court for the medical claim on April 23, 2009.  ECF No.

19   100 at 5.  In September of 2009, Marshall contacted Bonded to inform it that the

20   medical claim should have been paid by his employer because it was a Labor and

Industries claim.  *Id.*  Marshall was served with the lawsuit on January 19, 2010.

ECF No. 77 at 3.  On January 22, 2010, a City of Spokane claims administrator

sent Bonded a letter stating that the City would process Marshall's bill if it were

billed directly with the appropriate CPT[3] codes.  ECF No. 77 at 4.  In February

2010, Bonded was notified that SEP received payment from the City of Spokane

for the medical treatment provided to Marshall.  ECF No. 100 at 7.

In March 2010, Marshall's attorney filed a notice of appearance in the state

court case against Marshall.  *Id.*  In April 2010, Bonded contacted Marshall and

confirmed that his medical claim was paid in full, but demanded payment of its

litigation costs in the amount of $201.02.  *Id.*  In May 2010, the state court matter

was dismissed and Marshall was awarded attorney fees and costs of $2,529.25.

ECF No. 100 at 8.

On January 18, 2011, Marshall filed this putative class action alleging that

Bonded and SEP violated the FDCPA, WCAA, and WCPA by using unfair or

unconscionable means to collect the debt.  Marshall claimed that Bonded and SEP

---

[3]  "CPT" refers to the "Current Procedural Terminology" codes developed by the

American Medical Association to provide a uniform language that accurately

describes medical, surgical, and diagnostic services.

ORDER DENYING CLASS CERTIFICATION ~ 6

1    violated WAC 296-20-020 by attempting to collect for medical treatment rendered

2    to a City of Spokane employee for an "accepted industrial injury."

### MOTION TO COMPEL DISCOVERY

4        Plaintiff's Second Set of Requests for Production sought the medical records

5    of twenty-three (23) people who were identified as employees of the City of

6    Spokane, treated by Defendant SEP, and whose accounts were then sent to

7    Defendant Bonded for collection.  ECF No. 85.  Plaintiff contends that the

8    discovery provided so far shows 41 City of Spokane employees were treated, of

9    which nine (9) individuals' partial records list "SELF INS CITY OF SPOK" or

10   ACCIDENT/ EMPLOYMENT RELATED."  ECF No. 77 at 5.  According to the

11   Plaintiff, "sixteen (16) people received treatment for what appear[] to be non-

12   work-related injuries (i.e. 'Chest Pain' or 'Alcohol Intoxication')."  Plaintiff,

13   however, complains that he "cannot make an assumption one way or the other with

14   respect to the remaining sixteen (16) people based on the limited information given

15   in the 'face sheets.'"  ECF No. 77 at 5.  Accordingly, Plaintiff seeks full discovery

16   of these 23 patients' medical records.

17       Defendant SEP objected to Plaintiff's discovery request, citing state and

18   federal privacy laws.  ECF No. 112.  Plaintiff countered that the Protective Order

19   entered in this case, ECF No. 24, should have taken care of the privacy issue.

20

ORDER DENYING CLASS CERTIFICATION ~ 7

The Court finds that the Protective Order did not erase any objections any party had to providing discovery, ECF No. 24 at 15-16, it only implemented a mechanism to allow certain discovery to be provided without losing the confidential nature of otherwise discoverable information.

Furthermore, the Plaintiff completely ignores the demanding procedures and standard that must be followed before any privacy protected health information can be disclosed under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and its implementing regulations.  45 CFR § 164.512(e).  Far from merely entering a court order under the "good cause" standard of FRCP 26, as was suggested, when records are sought in a discovery request, HIPAA requires either actual consent of the patient or detailed and informative notice to each patient, opportunity to raise objections to the court, and resolution of those objections consistent presumably with the purposes of the privacy law.

Since admittedly none of the procedural prerequisites for requesting discovery of privacy protected health care records have been accomplished, the motion to compel must be denied.

## MOTION FOR EXTENSION OF TIME TO FILE CLASS CERTIFICATION

This case was originally filed on January 18, 2011.  ECF No. 1.  Trial was set for May 7, 2012, along with a deadline of July 31, 2011 to file a Motion for Class Certification.  ECF No. 26.  The Court later extended the trial date to May 6,

ORDER DENYING CLASS CERTIFICATION ~ 8

1    2013, and consequently extended the deadline to file the Motion for Class

2    Certification to June 1, 2012.  ECF No. 64.  It should be noted that the decision to

3    certify a class is required to be made early.  Fed. R. Civ. P. 23(c)(1)(A) ("At an

4    early practicable time after a person sues or is sued as a class representative, the

5    court must determine by order whether to certify the action as a class action.").

6        Both the Motion to Compel, ECF No. 82, and the Motion to Extend Time to

7    File Class Certification, ECF No. 79, were filed 10 days after the deadline for class

8    certification, June 11, 2012.  Fed. R. Civ. P. 6(b)(1)(B) provides that a party must

9    demonstrate "excusable neglect" in order to receive an extension of time when a

10   time period has expired. Plaintiff does not establish excusable neglect to bring his

11   motions after the time for class certification has expired.  Plaintiff did timely file

12   his motion for class certification. However as discussed below, with or without

13   receiving the tardily sought after information, the motion for class certification is

14   deficient.

## MOTION TO CERTIFY CLASS

16       Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, a plaintiff

17   seeking class certification must demonstrate that "(1) the class is so numerous that

18   joinder of all members is impracticable; (2) there are questions of law or fact

19   common to the class; (3) the claims or defenses of the representative parties are

20   typical of the claims or defenses of the class; and (4) the representative parties will

ORDER DENYING CLASS CERTIFICATION ~ 9

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are simply referred to as numerosity, commonality, typicality, and adequacy of representation.

Furthermore, Plaintiff's proposed class must satisfy at least one of the three requirements listed in Rule 23(b). *Wal-Mart Stores, Inc. v Dukes*, __ U.S. __, 131 S.Ct. 2541, 2548 (2011). Where, as here, the plaintiff seeks certification of a so-called "damages class" under Rule 23(b)(3), he or she must demonstrate that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As the party seeking class certification, the plaintiff bears the burden of establishing that the foregoing requirements have been satisfied. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

In evaluating a class certification motion, a court must perform a "rigorous analysis" to determine whether each of these prerequisites has been satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, __ U.S. __, 131 S. Ct. at 2551. The Ninth Circuit most recently clarified that the merits of a case *must* be considered for instance, under the commonality prong:

1
2
3
4

[W]e take this opportunity to clarify the correct standard. As we explained above, the merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements.

5
6

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

7

### 1. Numerosity

8

The numerosity requirement under Rule 23(a)(1) is satisfied if "the class is

9

so numerous that joinder of all members is impracticable." Fed. R. Civ. P.

10

23(a)(1). Joinder does not have to be impossible, but it may be considered

11

impracticable if class members would suffer a strong hardship or inconvenience if

12

joinder were required. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d

13

909, 913-14 (9th Cir. 1964). "Whether joinder would be impracticable depends on

14

the facts and circumstances of each case and does not, as a matter of law, require

15

any specific minimum number of class members." *Smith v. Univ. of Washington*

16

*Law School*, 2 F. Supp.2d 1324, 1340 (W.D. Wash. 1998). In general, however, a

17

class consisting of forty or more members is presumed to be sufficiently numerous.

18

*In re Wash. Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash.

19

2011); *see also Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010)

20

(upholding class of 20, but noting it could be a "jurisprudential rarity"). The

Supreme Court has indicated that a class of 15 "would be too small to meet the numerosity requirement." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). After reviewing lower court cases in which certification was denied to classes in the 16 to 37 range, the Supreme Court concluded that a trial court would almost certainly require joinder of all class members rather than certify a class of 15. *Id.* When the class size is not great, courts consider factors relevant to impracticability of joinder:

> [I]n deciding whether a case between 21 and 40 class members meets the numerosity requirement, the court should consider such factors as '(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members.'

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010) (approved class of 27 known members).

In the instant case, the putative class size is only 25 members and thus, a superficial numerical analysis will not suffice to satisfy Rule 23(a)(1). The Plaintiff identifies several cases from across the country in which courts have found anywhere from 10-40 members sufficient to find numerosity satisfied under Rule 23(a)(1). ECF No. 77 at 7-8. However, while the Plaintiff briefly identifies the above referenced factors for determining impracticability, he does not offer any

ORDER DENYING CLASS CERTIFICATION ~ 12

cogent arguments applying those factors to the instant case.[4] ECF No. 117 at 4.

When pressed at oral argument as to whether there was anything other than the

mere number of potential class members that would make their joinder

impracticable, Plaintiff's counsel identified nothing. Consequently, the Court will

conduct its own analysis, based on the five factors identified above, as to whether

the joinder of 25 potential plaintiffs would be impracticable.

### A. Judicial Economy

"[N]umerosity is satisfied where joining all class members would serve only

to impose financial burdens and clog the court's docket." *McCluskey*, 268 F.R.D.

at 674. Thus, many courts find that the judicial economy of a class action, as

opposed to multiple lawsuits by individual members, weighs heavily in favor of

finding numerosity is satisfied under Rule 23(a)(1). *See e.g.*, *Basile v. Merrill

Lynch, Pierce, Fenner & Smith*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (finding

subclass of 23 fulfilled numerosity requirement in part because "there is no reason

_____

[4] The Defendants also present no arguments as to whether the joinder of these

putative class members is impracticable, instead focusing on whittling down the

number of putative class members. These arguments are unavailing to the Court in

this analysis because it assumes, *arguendo*, that the class size could be 25

members.

to encumber the judicial system with 23 consolidated lawsuits when one will do").

However, the mere possibility of individual lawsuits is not dispositive when

examining whether judicial economy will be furthered by avoiding multiple

actions.  *See Greko v. Diesel U.S.A, Inc.*, 277 F.R.D. 419, 425-26 (N.D. Cal. 2011)

(finding no evidence that judicial economy would be promoted by allowing a class

action when no additional suits had been filed); *Ansari v. New York University*, 179

F.R.D. 112, 115 (S.D.N.Y. 1998) (35 member class was not impracticable to join,

in part because of insufficient evidence that any of the prospective class had filed,

or threatened to file, a lawsuit).

The Plaintiff offers no argument as to whether avoiding multiple suits by

these individuals would promote judicial economy. The Court notes that all 25

proposed class members are employees of the City of Spokane and therefore

should be easy to locate and able to participate meaningfully in any litigation if the

members were joined.  Also, Plaintiff asserts that none of the putative class

members, aside from the named Plaintiff, are aware of the putative class action.

Thus, it is fair to assume that none of them have filed or threatened to file,

individual lawsuits.  While mindful of the importance of preserving its resources,

the court finds insufficient evidence that judicial economy would, in fact, be

furthered by avoiding multiple suits in this case.

//

ORDER DENYING CLASS CERTIFICATION ~ 14

## B. Geographic Dispersion

The second factor, "geographic dispersion of members of the proposed class," is often the determining factor when a court is deciding whether joinder of a relatively small number of class members would be impracticable. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-32 (1st Cir. 1985) (holding it was not impracticable to join 49 plaintiffs in one suit and noting that "[j]oinder is considered more practicable when all members of the class are from the same geographic area" and can be easily identified.); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (impracticable to join 29 members from nine different states); *Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 (7th Cir. 1969) (a class limited to 40 would be impracticable to join where "individual members of the class are widely scattered"); *Allen v. Isaac*, 99 F.R.D. 45, 53 (D.C. Ill. 1983) (geographic dispersion of the putative class across seven states "weighs heavily").

Plaintiff does not address the geographic dispersion factor, presumably because it does not support a finding of impracticability.  Plaintiff seeks a putative class of City of Spokane employees. These individuals live within commuting distance of Spokane, where the Court is based. The lack of geographic dispersion of the putative class members weighs heavily against a finding that joinder is impracticable.

//

## C. Financial Resources and
## D. Ability of Members to File Individual Suits

The third factor is whether financial resources of the members would make joinder impracticable. There is no evidence as to whether the 25 putative class members have the resources to file individual suits. However, this factor is often analyzed in conjunction with the fourth factor, the ability of the members to file individual suits. *See e.g., McCluskey*, 268 F.R.D. at 675.  In the context of a numerosity analysis, courts often focuses on the particular challenges a class member could face if they chose to bring an individual suit.  *See Ansari*, 179 F.R.D. at 115 (identifying the proposed class as educated professionals who could bring suit if they wished, as opposed to the "elderly", "unsophisticated", or "incarcerated"); *Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993) (class members were "economically disadvantaged" which would make it difficult for them to pursue individual lawsuits); *Arkansas Ed. Ass'n v. Board of Ed. of Portland, Ark. School Dist.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (finding numerosity was not error when teachers suing school district for race discrimination had a "natural fear or reluctance" to bring individual actions against their employer school district); *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) (finding it unlikely that plaintiffs' would bring individual suits due to mental handicap, confinement, and economic resources).

ORDER DENYING CLASS CERTIFICATION ~ 16

The Plaintiff argues that the putative class members in this case are not aware of their rights and are therefore "unlikely to obtain relief if a class is not certified."[5]  ECF No. 77 at 9.  Plaintiff does not provide any legal authority in support of this argument.  Undoubtedly, an individual would not be "able" to bring a lawsuit if they were not aware that the lawsuit existed.  However, there is no evidence to suggest that any of the putative class members suffer from an economic or physical hardship that would prevent them from bringing suit if they became aware of their rights at some future date.  On balance, this factor is indeterminate of whether joinder is impractical in this case.

### E.  Requests for Prospective Relief

The fifth factor is whether requests for prospective relief may affect future class members. Here, although Plaintiff's complaint sought declaratory relief, ECF No. 1 at 14-15, and injunctive relief, ECF No. 1 at 21, Plaintiff does not seek class certification for this relief under Rule 23(b)(2), nor has he proposed the addition of

---

[5] Plaintiff also supports his superiority argument, not his numerosity argument, with the contention that when the amount at issue is relatively small, consumer class actions are more efficient.  ECF No. 77 at 18.  Plaintiff has not quantified the value of his claim nor a typical class member's claim against either defendant in order to support either of his arguments.

any future class members and only predicts a maximum class size of 25 members. ECF No. 77 at 8. This factor is not determinative in the court's overall analysis.

After considering and weighing each of the five factors discussed above, the court finds the Plaintiff does not satisfy his burden to demonstrate that the putative class of 25 members is so numerous that joinder is impracticable under Rule 23(a)(1). The most heavily weighted factor in this decision is the complete lack of geographic dispersion. There is simply no evidence that joinder of 25 City of Spokane employees would be impracticable and an analysis of the other four factors does not provide any compelling reason that joinder would otherwise be impracticable.

    2)    **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For purposes of this rule, "[c]ommonality exists where class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal quotation and citation omitted). Rule 23(a)(2) "is easy to misread, since any competently crafted class complaint literally raises common questions." *Dukes*, 131 S. Ct. at 2551 (internal quotation and citation omitted). For example: Do you work for the City of Spokane? Did you get injured? Did you seek

ORDER DENYING CLASS CERTIFICATION ~ 18

treatment by SEP?  Did SEP or Bonded send you a bill?  These questions are not sufficient to obtain class certification.  *See id.*  The class members' claims "must depend upon a common contention" and that contention must be "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  At its core, the commonality requirement is designed to ensure that classwide adjudication will "generate common *answers* apt to drive the resolution of the litigation."  *Dukes*, 131 S. Ct. at 2551 (emphasis in original) (internal quotation and citation omitted).

Plaintiff's sum total argument concerning commonality is comprised of two paragraphs:

> There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.
>
> * * *
>
> Plaintiff Marshal and the members of the putative class were all employed by the City of Spokane, injured while on the job, treated by Defendant Spokane Emergency Physicians, and the billed by Defendant Bonded Adjustment in violation of WAC 296-20-020. These common issues of fact and law predominate over any questions affecting only individual class members.

ECF No. 77 at 10-11.  This is nothing more than paraphrasing the definition of the class sought to be certified, which the Supreme Court clearly held to be inadequate.

Bonded challenges Marshall's commonality showing on the ground that individualized proof will be required to resolve the FDCPA and WCPA causes of

ORDER DENYING CLASS CERTIFICATION ~ 19

action, such that the questions of law and fact are not common to the class as a whole.  ECF No. 100 at 24, 27-28. Specifically, Bonded argues that commonality is lacking because each class member would have to first show that he or she was billed for an <u>accepted</u> injury in order to claim violations of WAC 296-20-020. ECF No. 100 at 28 (emphasis added).

Here lies a major dispute between the parties.  Marshall contends that upon presentation for medical treatment, based solely on his representation that he was a City of Spokane worker, SEP and Bonded were immediately barred from seeking payment directly from Marshall.  SEP and Bonded contend that they were allowed to seek payment from a patient until the injury was officially "accepted" by the self-insurer, in this case the City of Spokane.  In keeping with the Ninth Circuit's instruction that a district court must consider the merits of class members' substantive claims if they overlap with Rule 23(a) class certification requirements, the Court now undertakes a brief evaluation of when a claim is "accepted" under WAC 296-20-020 for the purposes of determining whether Plaintiff sustains his burden to meet the commonality requirement. *See Ellis*, 657 F.3d at 981.

The class proposed by Marshall includes City of Spokane employees who were injured on the job, and who were billed by SEP and Bonded <u>in violation of WAC 296-20-020</u>.  ECF No. 73 at 2.  Under this Labor & Industries regulation, "a worker shall not be billed for treatment rendered for his accepted industrial injury

ORDER DENYING CLASS CERTIFICATION ~ 20

1    or occupational disease." Wash. Admin. Code § 296-20-020. This of course begs

2    the following questions: (1) what is an accepted injury? and (2) when does that

3    acceptance occur?  According to the definitional regulation, WAC 296-20-01002,

4    "acceptance, accepted condition" is defined as follows:

> Determination by a qualified representative of the department or self-insurer that reimbursement for the diagnosis and curative or rehabilitative treatment of a claimant's medical condition is the responsibility of the department or self-insurer. The condition being accepted must be specified by one or more diagnosis codes from the current edition of the International Classification of Diseases, Clinically Modified (ICD-CM).

9    Wash. Admin. Code § 296-20-01002. Thus, the plain text of the regulation makes

10   it clear that to constitute an "accepted injury" it must be "accepted" by the self-

11   insurer (the City of Spokane in this case) as their responsibility and specified by

12   the correct billing codes.

13        Marshall asserts that his claim and those of other putative class members

14   were "accepted" when treatment was rendered, and therefore SEP and Bonded

15   automatically violated WAC 296-20-020 when they sent a bill to Marshall and any

16   putative class members.  ECF No. 117 at 6 (emphasis added).  This is a

17   misstatement of the law.  WAC 296-20-01002 clearly defines a medical condition

18   as being "accepted" only after determination by the self-insurer that reimbursement

19   for the medical claim is the responsibility of the self-insurer.  Moreover, WAC

20   296-20-020 expressly allows that "when there is questionable eligibility … the

ORDER DENYING CLASS CERTIFICATION ~ 21

1    provider may require the worker to pay for the treatment rendered."

2    Correspondingly, the regulation allows for the worker to be reimbursed by a

3    provider if a claim of questionable eligibility is allowed after the worker has

4    already paid the provider.

5          At oral argument, Marshall attempted to support its claim that treatment is

6    accepted by the self-insurer at the time of treatment by citing the first sentence of

7    WAC 296-20-020 which reads, "[t]he filing of an accident report or the rendering

8    of treatment to a worker who comes under the department's or self-insurer's

9    jurisdiction, as the case may be, constitutes acceptance of the department's medical

10   aid rules and compliance with its rules and fees."  This is a misunderstanding of

11   the law.  In this portion of the regulation, "acceptance" concerns the health care

12   provider's "acceptance" of the Department of Labor and Industries rules and fee

13   schedule when participating in the Industrial Insurance Act by treating an injured

14   worker.  Washington case law supports this interpretation as well, although in

15   contextually different litigation.  *See Wash. State Dept. of Labor & Indus. v.*

16   *Kantor*, 94 Wash. App. 764, 773 (Ct. App. 1999); *Dept. of Labor & Indus. v. Allen*,

17   100 Wash. App. 526, 533 (Ct. App. 2000).  These cases make clear that this

18   portion of the regulation refers to the provider's "acceptance" of the department's

19   rules and fees by providing treatment, not "acceptance" by the provider that the

20   medical claim is in fact covered by the self-insurer.

ORDER DENYING CLASS CERTIFICATION ~ 22

1    The foregoing analysis is important in determining whether the Plaintiff

2    sustained his burden to demonstrate that there are questions of law or fact common

3    to the class.  As a threshold matter, the putative class members' claims must

4    depend on a common contention.  *See Dukes*, 131 S. Ct. 2551.  Absent any

5    assistance whatsoever in the Plaintiff's briefing, the court can conceive that there

6    could be two common questions of law, one for each alleged statutory violation:

7    1) Does the FDCPA allow SEP and Bonded to bill a patient for a work place injury

8    under the Industrial Insurance Act in Washington? and 2)  Does the WCPA allow

9    SEP and Bonded to bill a patient for a workplace injury under the Industrial

10    Insurance Act in Washington?  Next, these two common contentions must be

11    capable of classwide resolution.  *Id*.

12    As discussed above, answering these questions in this case would

13    necessarily require an individual factual determination for each class member as to

14    whether their claim for medical expenses incurred on the job was "accepted" by

15    the City of Spokane before the patient was billed.  Thus, a determination of the

16    truth or falsity of these common contentions could not resolve an issue central to

17    the validity of the class members' claims in one stroke.  For these reasons, the

18    Court finds the Plaintiff did not sustain his burden to demonstrate commonality.

19    //

20    //

ORDER DENYING CLASS CERTIFICATION ~ 23

3)   **Typicality**

Rule 23(a)(3) provides that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This requirement serves to ensure that "the interest of the named representative aligns with the interests of the class."  *Wolin*, 617 F.3d at 1175. Factors relevant to the typicality inquiry include "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ellis*, 657 F.3d at 984.  Stated differently, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  *Id.*; *see also Stearns*, 655 F.3d at 1019 ("The typicality requirement looks to whether the claims of the class representatives are typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

Like Plaintiff's commonality argument, his typicality argument consists of two paragraphs:

> In the instant case, typicality is inherent in the class definition, i.e.,
> each of the putative class and/or subclass suffered the same violation
> of the FDCPA and/or Washington law. All class members' claims
> arise from the same practices of Defendants that gave rise to the
> Plaintiff's claims.

\* \* \*

ORDER DENYING CLASS CERTIFICATION ~ 24

> In this case, the defendants used the same forms and followed the
> same procedures repeated in the same way against each person in each
> class and/or subclass.

ECF No. 77 at 12-13.  This boilerplate language is not helpful to the Court.  First,

only one class is sought to be certified, not a class and subclass.  Second, there

have been no illegal "forms" or pattern of procedures offered to the Court to

support these alleged violations of the FDCPA and/or Washington law, so the

citations and argument referencing debt collection forms and letters are not helpful

to the Court.   Plaintiff has not sustained his burden to show that his case is typical

of other putative class members' cases, especially given its unusual timing and

progression, including: the avoidance of service of process, the appearance of

multiple attorneys on his behalf, the service of process occurring months after the

state court action was filed, and the ultimate "acceptance" of the L & I claim by the

City of Spokane.

> ### 4)     **Adequacy of Representation**

The final prerequisite for class certification is that "the representative parties

will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

23(a)(4).  This requirement applies to both the named plaintiff and to his attorney.

"To determine whether named plaintiffs will adequately represent a class, courts

must resolve two questions: (1) do the named plaintiffs and their counsel have any

conflicts of interest with other class members[;] and (2) will the named plaintiffs

and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985.  Plaintiff  contends he meets the test based on the following argument:

> Plaintiff Marshall and the class members seek statutory and actual damages and declaratory relief as the result of the Defendants' unlawful collection practices.
> Given the identical nature of the claims between Plaintiff Marshall and the class members, there is no potential for conflicting interests in this action.

ECF No. 77 at 15.  Plaintiff Marshall also filed a declaration reciting that he is aware of this lawsuit, understands the procedures and agrees to be the class representative.  ECF No. 76.  Proposed class counsel has filed a detailed declaration in support of his qualifications.  ECF No. 78.  There is nothing before the Court that would prevent it from finding Plaintiff and his counsel could adequately represent the class.

### 5)   Request for Rule 23(b)(3) Type Class Action

Plaintiff only seeks class certification under Rule 23(b)(3).  ECF No. 77 at 15-19.  Before certifying such a class, a court must find that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

//

ORDER DENYING CLASS CERTIFICATION ~ 26

### A.  Do Common Questions of Law or Fact Predominate?

For purposes of Rule 23(b)(3), the relevant inquiry is whether common questions *predominate* over individualized questions.  *See Wolin*, 617 F.3d at 1172 ("While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate.").  Although Rule 23(a)(2) and Rule 23(b)(3) both address commonality, "the 23(b)(3) test is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

Marshall argues that due to the "standardized nature of Defendant's conduct, common issues predominate."  ECF No. 77 at 16.  And he further asserts that the only individualized issue is identification of the individuals who received medical bills in violation of WAC 296-20-020.  ECF No. 77 at 16-17.  However, as noted in the typicality section above, Marshall offers no evidence of standardized documents or practices by SEP or Bonded.  Therefore the citations and argument referencing the use of standardized debt collection letters are not persuasive to the court.  Marshall further asserts that common questions of law and fact predominate only because all of the class members were subjected to the same violations of the FDCPA and state law.  ECF No. 77 at 16.  The Court disagrees.

As discussed above regarding commonality, there is a threshold factual question regarding the timing and the nature of collection activity that must be analyzed for each putative class member in order to determine whether there was a violation of the FDCPA or state law in their particular case.  Specifically, whether the L & I claim was "accepted" by the City of Spokane and when that acceptance was communicated.  Individualized issues will then pervade the case for each class member, including, but not limited to; whether the injury occurred on the job, whether the alleged illegal collection activity occurred within the statute of limitations for each cause of action, whether the alleged illegal collection activity constituted a prohibited collection action under each cause of action, whether either defendant has any statutory defenses as to any or all communications with the debtor, whether the class member suffered actual damage and how much or whether the class member is only entitled to statutory damages.

These individual issues are not capable of resolution by a representative. Indeed, these questions unique to individual class members clearly predominate over common questions of law and fact, further supporting the Court's determination not to certify the class.

### B. Is Class Adjudication Superior to Individual Actions?

In considering whether class adjudication is superior to separate individual actions, a court must determine "whether the objectives of the particular class

action procedure will be achieved in the particular case." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).  In conducting this superiority analysis, a court must consider, *inter alia*, (1) the interests of individual class members in pursuing their claims separately; (2) the extent of any existing litigation concerning the same subject-matter; (3) the desirability of concentrating the litigation in a particular forum; and (4) the feasibility of managing the case as a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  A court's consideration of these factors must "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quotation and citation omitted).  Stated differently, a court evaluating a motion to certify a Rule 23(b)(3) class must perform "a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023.

Marshall contends that class adjudication is superior in this case because the putative class members are not aware of their rights, and the small potential recovery may be prohibitive in light of the cost of pursuing individual litigation. ECF No. 117 at 12.  Defendant Bonded responds that a court may deny certification if the manageability of litigating numerous individual issues outweighs the efficiency of class adjudication.  ECF No. 100 at 28.

Here, a balancing of the factors identified above weighs slightly in favor of

individual adjudication or actual joinder of all class members. First, each class

member may not have a significant interest in litigating his or her claims

separately. The cost and inconvenience of pursuing individual claims could

certainly exceed potential recovery, and in these situations class adjudication is

generally superior. *See Zinser*, 253 F.3d at 1191 (noting that certification is

generally proper when class members will be "unable to pursue their claims on an

individual basis because the cost of doing so exceeds any recovery they might

secure"). In addition, there is no current litigation regarding these claims between

putative class members and either of the Defendants, nor is there any reason to

question the desirability of concentrating litigation in the Eastern District of

Washington since all of the putative class members were City of Spokane workers.

Both of these factors weigh in favor of class certification.

However, as to the fourth factor, adjudication by class representation is

likely not more efficient in these circumstances. Given that the factual scenarios of

each of the purported class members will be so grossly divergent, as discussed in

detail above, individual adjudication will de facto occur irrespective of the method

of adjudication. Thus, it is unclear whether adjudicating this case as a class action

would necessarily preserve judicial economy more than management of separate

lawsuits. After weighing these four factors, the court cannot definitively find that

ORDER DENYING CLASS CERTIFICATION ~ 30

class adjudication would be more efficient, and therefore superior, to individual lawsuits.

For the foregoing reasons, the Plaintiff's Motion for Class Certification is denied. It should also be noted that the Court declines to certify Plaintiff's claims for declaratory and injunctive relief, because Plaintiff has failed to ask for and address the requirements for certification of such claims under Rule 23(b)(2).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  The Motion for Class Certification, ECF No. 73, is **DENIED**.

2.  The Motion for Extension of Time to File Class Certification, ECF No. 79, is **DENIED**.

3.  The Motion to Compel, ECF No. 82, is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 25th day of July, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER DENYING CLASS CERTIFICATION ~ 31