1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7    ANDREW MARSHALL,

8                          Plaintiff,

9          v.

10   BONDED ADJUSTMENT
     COMPANY, a Washington
11   Corporation, and SPOKANE
     EMERGENCY PHYSICIANS, P.S., a
12   Washington Corporation,

13                          Defendants.

NO:  11-CV-0022-TOR

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

14

15          BEFORE THE COURT is Defendant Bonded Adjustment Company's

16   Motion for Summary Judgment. ECF No. 122.  This matter was heard without oral

17   argument on November 9, 2012.  Also before the Court is Defendant Spokane

18   Emergency Physicians' Motion for Summary Judgment.  ECF No. 147.  This

19   matter has been fully briefed by the parties and set to be heard without oral

20   argument on January 2, 2013.  There is no reason to delay a decision on these

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 1

motions.  The Court has reviewed the relevant pleadings and the supporting materials, and is fully informed.

BACKGROUND

Plaintiff Andrew Marshall ("Marshall") alleges that Defendants Bonded Adjustment Company ("Bonded") and Spokane Emergency Physicians, P.S. ("SEP") violated the Fair Debt Collection Practices Act ("FDCPA") and the State of Washington Collection Agency Act ("WCAA").  Additionally, Marshall claims that Bonded and SEP violated the Washington State Consumer Protection Act ("WCPA").  Underlying these claims is Marshall's allegation that Bonded and SEP violated WAC 296-20-020 by attempting to collect from a City of Spokane worker on medical bills for services rendered for an "accepted industrial injury."  Presently before the Court are Defendants' Motions for Summary Judgment on all claims.

FACTS

On June 19, 2008, Plaintiff Marshall sustained an injury to his eye while performing job duties for the City of Spokane.  ECF No. 131 at 2.  As a City of Spokane employee, Marshall is covered by the City of Spokane's self-insurance program for injuries sustained in the course and scope of his duties.  *Id*.  Marshall's supervisor drove him to Sacred Heart Medical Center in Spokane, Washington for treatment, whereupon he was treated by medical provider SEP. ECF No. 131 at 2. Marshall disclosed to the Medical Center that he was an employee of the City of

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 2

Spokane and that he was injured while on the job.  ECF No. 131 at 2.  The total bill for medical treatment by SEP was $196.00.  ECF No. 123 at 2.  At the time Marshall received treatment he signed a document stating "if you are covered by a government program(s) or an insurance plan(s) the hospital will bill them directly for your care," but also advising him that he "may receive bills from physicians who provided services to you while you are in the hospital such as … emergency room physicians. These services are not part of the hospital bill and you will be responsible to pay them in accordance with the terms set by those physicians."[1] ECF No. 100-2, Ex. A.

On July 3, 2008 and July 16, 2008, SEP billed the City of Spokane through Marina Medical Billing Service, Inc. ("Marina"), a company that provides medical billing services for SEP.  ECF No. 152 ¶¶ 14, 17; Ex. A.  On November 18, 2008, Marina contacted the City of Spokane to obtain information on the status of their claims and according to their records they reached Ben at the City.  ECF No. 152 at 11.  The uncontroverted affidavit of Melissa Mayen, then Client Manager for Marina, indicates the City of Spokane stated that SEP's claims were on file, but

---

[1] As indicated by Marshall, this document was also signed by a Sacred Heart "hospital representative" but it was not signed by a representative of Defendant SEP. Plaintiff's Response to the Defendant's Local Rule 56.1 Statement of Facts in Support of Summary Judgment, ECF No. 130 at 2.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 3

had not been processed for payment since the City was still waiting to receive the accident report from Marshall.  ECF No. 152 at ¶ 22.  Consequently, on November 18, 2008, Marina sent Marshall a letter informing him that his insurer (the City of Spokane) required more information before his claims could be processed.  *Id*. at ¶ 24.  Thereafter, Marina never received payment from the City nor did it receive any correspondence from Marshall.

Marshall supplemented his response to the instant motion with recently obtained information from Marshall's City of Spokane claim file.[2]  ECF No. 142.  Significantly, the City of Spokane, specifically claims specialist W. "Ben" Gagne, sent Marshall a letter on December 11, 2008, indicating that his injury was covered by the industrial insurance law.  ECF No. 142-1 at 7.  The letter assigned a claim number for Marshall to give to all providers and indicated that he should not be billed for services related to his work injury.  *Id*.  In fact, the letter specifically advised Marshall of his obligations, including:

> YOU ARE RESPONSIBLE TO:
> - Advise all medical providers to send their bills to
>     City of Spokane – Risk Management Department
>     808 W. Spokane Falls Blvd.
>     Spokane, WA 99201

---

[2] Bonded claims this information is not properly before the Court because it was filed untimely and without leave of the Court to file additional documents.  This challenge is discussed in footnote 11, infra.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 4

Additionally, the letter explained that:

> THE CITY IS RESPONSIBLE TO:
> - Pay the medical bills related to your claim in a timely manner.

*Id.*[3]  It is apparent from the present litigation, that neither of these obligations was performed by the City of Spokane or Marshall.

On or around December 26, 2008, and again on January 22, 2009, Marina, on behalf of SEP, sent billing statements directly to Marshall.  ECF No. 152 ¶¶ 29, 33.[4]  Having received no payment from Marshall, SEP assigned the claim against

---

[3] In addition, the information recently provided by Marshall contains a medical bill from Sacred Heart Medical Center indicating charges for the pharmacy and the emergency room visit totaling $447.78.  *Id*. at 14.  An "explanation of review" of the medical bill further indicates that after "reduction," the "total recommended allowance" to be paid to the provider is $192.55.  *Id*. at p.12.  On December 17, 2008, the City of Spokane issued a check to Sacred Heart Medical Center for $192.55.  *Id*. at 15.  The December 17 date coincides with the City's Self Insurer Accident Report showing a date of 12/17/08 for "date closure mailed."  *Id*. at 9, lower left corner.  It appears the City closed the file without paying SEP's claims.

[4] Marina and Marshall traded voicemail messages on January 19, 2009, but neither party enlightens the Court with the content of those messages.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 5

1   Marshall to Bonded on February 24, 2009.  *Id.* at ¶ 36.  Bonded attempted to

2   communicate with Marshall about payment of the claim, but was unable to contact

3   Marshall until after a state court complaint was filed. ECF No. 123 at 3.  After

4   failing to collect from Marshall, Bonded filed a civil complaint in Spokane County

5   district court for the medical claim on April 23, 2009.  ECF No. 123 at 4.

6        In September of 2009, Marshall sent Bonded a letter disputing the medical

7   claim and indicating that it should have been paid by his employer because it was a

8   Labor and Industries claim. ECF No. 100-2, Ex. D.  On October 6, 2009, attorney

9   Robert Mitchell contacted Bonded and informed it that he represented Marshall

10  and would be accepting service. ECF No. 123 at 4. On October 7, 2009, Bonded

11  confirmed with Marina the history of the claim from July 3, 2008 to February 24,

12  2009, as indicated above.  *Id.* Marina also sent a statement to Bonded that indicated

13  Marshall's insurance was "Cash", even though the paperwork at the time of his

14  injury indicated his insurance was L&I.  ECF No. 100-2, Ex. E.  Around December

15  1, 2009, Bonded received notice from attorney Mitchell that he no longer

16  represented Marshall. ECF No. 123 at 5.  Marshall was served with the Spokane

17  County District Court collection lawsuit on January 19, 2010.  *Id.*

18       In a letter dated January 22, 2010, Cathy Schafer ("Schafer"), Claims

19  Administrator for the City of Spokane, sent a letter to Bonded stating that "after

20  reviewing the file it does show that he was seen at the emergency room on 6-19-08

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 6

but that we never received a bill from Spokane Emergency Physicians."  ECF No.

100-2, Ex. F.  She further noted that if SEP billed the City of Spokane directly,

with appropriate CPT[5] codes, they would process the bill for payment.  *Id*.  On

February 2, 2010, pursuant to Bonded's request, Marina rebilled the claim sending

one copy to Bonded and one copy to the City of Spokane.  ECF No. 152 at ¶ 39.

About February 5, 2010, Bonded received a health insurance claim form from

Marina for Marshall's claim and sent it to Schafer. ECF No. 123 at 5. Bonded

received a call from Schafer indicating that the medical claim was paid directly to

SEP on February 11, 2010.[6]  ECF No. 123 at 6.  Around February 25, Marshall

contacted Bonded to indicate that the medical claim had been paid to SEP.  *Id*.  On

March 1, 2010, SEP reported direct payment to Bonded of $141.21 with a write off

of $54.79.  *Id*.  On March 30, 2010, Kirk D. Miller ("Miller") filed a notice of

appearance on behalf of Marshall in the Spokane County District Court matter.  *Id*.

---

[5]  "CPT" refers to the "Current Procedural Terminology" codes developed by the

American Medical Association to provide a uniform language that accurately

describes medical, surgical, and diagnostic services.

[6] This is confirmed by an affidavit filed in the Spokane County District Court case

by W. "Ben" Gagne, a City of Spokane claims specialist who testified that "when

proper documentation was received from [SEP] the claim was paid in full.

Payment was made on February 11, 2010." Miller Decl., ECF No. 129-1.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 7

1   In a letter dated April 5, 2010, Bonded sent a letter to Miller confirming the direct

2   payment by SEP and demanding payment for a balance of $201.02 due on the

3   litigation.  ECF No. 100-2, Ex. I.

4          Upon the request of Miller, Bonded asked SEP for proof of the original

5   denial of the claim from the City of Spokane. ECF No. 100-2, Ex. J.  SEP

6   responded that the account should be cancelled. *Id*.  Bonded also asked Marina for

7   proof of the denial Marina represented existed back in November 2008, in order to

8   show a basis for going ahead with a lawsuit based on denial of the claim. *Id*.

9   Marina then responded that

10          the claim was never denied by the City of Spokane for no claim ever being
            filed. They were needing [sic] documentation for the facility bill and
11          therefore denied our claim as well. We did not receive a written denial, the
            information was obtained from us checking status on our claim over the
12          phone speaking with a representative.

13  *Id*.  Bonded asserts that this was its first notice that there was no denial. ECF No.

14  123 at 7.  Bonded also appears to interpret this information as indicating that

15  because the City of Spokane needed documentation for the "facility bill," that it

16  denied both SEP's and the hospital's claim.  ECF No. 123 at 6.

17          In May 2010, the state court matter was dismissed and Marshall was

18  awarded attorney fees and costs of $2,529.25, over the objection of Bonded.[7]  ECF

19  ────────────
    [7] Marshall asserts that this lawsuit was dismissed "since its claim was prohibited

20  by WAC 296-20-020." ECF No. 131 at 5. Bonded maintains that the lawsuit was

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 8

No. 123 at 7. On January 18, 2011, Marshall filed its Complaint in this case against Bonded and SEP.  ECF No. 1.

## SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

---

dismissed by stipulation of the parties.  ECF No. 123 at 7. However, the text of the Order of Dismissal from the state court offers no reasoning for its finding, and thus neither contention can be confirmed.  ECF No. 100-2, Ex. K.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 9

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 327, 378 (2007).

DISCUSSION

**A. FDCPA Claims**

The FDCPA prohibits debt collectors from making false or misleading representations and from engaging in unfair practices.  *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).  "The purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007). The FDCPA "should be construed liberally in favor of the consumer." *Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006)(quotation omitted).

The FDCPA provisions at issue in this case are 15 U.S.C. §§ 1692e and 1692f.  Section 1692e(2) prohibits "[t]he false representation of … the character, amount, or legal status of any debt."  15 U.S.C. §§1692e(2).  Section 1692f(1) prohibits a debt collector from using "unfair or unconscionable means to collect or

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 10

attempt to collect any debt," including "[t]he collection of any amount (including

any interest, fee, charge, or expense incidental to the principal obligation) unless

such amount is expressly authorized by the agreement creating the debt or

permitted by law." 15 U.S.C. § 1692f(1).  Whether conduct by a defendant violates

these sections of the FDCPA requires an objective analysis that considers whether

"the least sophisticated debtor would likely be misled by a communication."

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010); *see also Guerrero*,

499 F.3d at 934.

      1.  <u>Statute of Limitations</u>

      Actions to enforce liability for violations of the FDCPA may be brought

within one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d).

Marshall filed his Complaint in this Court on January 18, 2011.  Thus, any

communication between Bonded and Marshall prior to January 18, 2010, is outside

the statute of limitations.  On January 19, 2010 Marshall was personally served

with the State Court Complaint filed by Bonded seeking judgment against Marshall

for the medical claim in the amount of $196.00, plus interest of $3.02, and for

statutory court costs including: statutory attorney fee of $125.00, filing fee of

$53.00, estimated service process fee of $20.00; and reasonable attorney fees.

Dillin Decl., ECF No. 144, Ex. A.  The Ninth Circuit has definitively held that "a

complaint served directly on a consumer to facilitate debt-collection efforts is a

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 11

communication subject to the requirements of §§1692e and 1692f." *Donohue*, 592 F.3d at 1031-32.

Aside from the service of this Complaint, there was no contact between Bonded and Marshall between January of 2010 and March 30, 2010, when attorney Kirk D. Miller entered a notice of appearance on behalf of Marshall in the State Court matter. ECF No. 100-2, Ex. H. During this same time period, Bonded was communicating with the City of Spokane about Marshall's medical claim, which was ultimately paid by the City of Spokane directly to SEP. On April 5, 2010, Bonded made demand on Marshall for the "balance due" on the State Court matter in the amount of $201.02, which included the statutory court costs and interest on the underlying medical claim. ECF No. 100-2, Ex. I. However, communications sent only to a debtor's attorney, with no accompanying threat to contact the debtor directly, are not actionable under the FDCPA. *See Guerrero*, 499 F.3d at 936. Because the demand was sent directly to Marshall's attorney, this contact is not actionable under the FDCPA.

Thus, the only communication made within the FDCPA statute of limitations, and sent directly to Marshall instead of to his attorney, is the service of the state district court matter to Marshall directly on January 19, 2010. This single communication from Bonded to Marshall is the only relevant contact for the Court to consider.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 12

2.  "Acceptance" of Marshall's Medical Claim

Under the applicable Labor & Industries regulation, "a worker shall not be billed for treatment rendered for his accepted industrial injury or occupational disease." Wash. Admin. Code § 296-20-020.  Further, "[w]hen there is questionable eligibility … the provider may require the worker to pay for the treatment rendered."[8]  *Id*.  According to the definitional regulation, WAC 296-20-01002, "acceptance, accepted condition" is defined as follows:

> Determination by a qualified representative of the department or self-insurer that reimbursement for the diagnosis and curative or rehabilitative treatment of a claimant's medical condition is the responsibility of the department or self-insurer. The condition being accepted must be specified by one or more diagnosis codes from the current edition of the International Classification of Diseases, Clinically Modified (ICD-CM).

Wash. Admin. Code § 296-20-01002. The plain text of the regulation makes it clear that to constitute an "accepted injury" it must be "accepted" by the self-insurer as their responsibility and specified by the correct billing codes.  The allegations in Marshall's Complaint center on the contention that any attempts to collect on the medical claim from Marshall after the claim was "accepted" was a

---

[8] If the provider does bill the worker or other insurance, and the claim is subsequently allowed, "the provider shall refund the worker or insurer in full and bill the department or self-insurer for services rendered …." Wash. Admin. Code § 296-20-020.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 13

1   violation of the FDCPA, because the Defendants allegedly attempted to bill

2   Marshall for the full balance of the medical bill as opposed to the allowable

3   reduced industrial insurance rate.

4        The Court has previously examined the issue of when and how an L&I claim

5   is "accepted" under the applicable Washington law.  *See* ECF No. 127.  In its

6   Order Denying Class Certification, the Court found, contrary to Marshall's

7   interpretation of the regulation, that a medical claim is <u>not</u> automatically

8   "accepted" at the time treatment is rendered.  In the instant motion, the parties once

9   again heavily dispute the timing of when Marshall's medical claim was

10  "accepted."

11       Bonded argues that the claim was not "accepted" until the City of Spokane

12  actually paid the bill directly to SEP on February 11, 2010.  ECF No. 123 at 10.

13  Bonded alternately argues in its reply brief that the claim was not accepted until

14  after January 25, 2010.  ECF No. 132 at 2.  This is the date Bonded received a

15  letter from a claims administrator at the City of Spokane requesting that SEP bill

16  her directly with CPT codes.  ECF No. 100-2, Ex. F.  Thus, according to Bonded,

17  the service of the state court matter on Marshall on January 19, 2010 could not be a

18  violation of the FDCPA because the claim was not "accepted" by the City of

19  Spokane at that time, and under the applicable Washington regulation SEP and

20

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 14

1  Bonded were not statutorily barred from seeking payment directly from Marshall

2  on the medical claim.

3  According to SEP, the medical claim was "accepted" when the City of

4  Spokane determined that payment was its responsibility.  It is uncontested that SEP

5  submitted its claims to the City of Spokane in July 2008, contacted the City on

6  November 18, 2008 to check on the status of its claims, but was never paid by

7  either the City or Marshall.  It was not until January 22, 2010, that the City of

8  Spokane communicated to Bonded (and indirectly to Marina on SEP's behalf) that

9  it would process SEP's bill for payment.  ECF No. 100-2, Ex. F

10  Marshall responds with two separate arguments as to how and when

11  Marshall's medical claim was "accepted" by the City of Spokane.   First, Marshall

12  makes the same argument previously rejected by the Court's Order denying his

13  motion for class certification, namely, that "acceptance" of the industrial insurance

14  rules happens at the time of treatment.  Marshall again refers to the first sentence

15  of WAC 296-20-020 which reads, "[t]he filing of an accident report or the

16  rendering of treatment to a worker who comes under the department's or self-

17  insurer's jurisdiction, as the case may be, constitutes acceptance of the

18  department's medical aid rules and compliance with its rules and fees."  He further

19  cites to RCW 51.28.020 of the industrial insurance law, as quoted in WAC 296-20-

20  020, indicating that when a doctor renders treatment to a worker entitled to benefits

under the law, the physician is required to inform the patient of his rights under the

title and lend assistance to the patient in applying for compensation "and such

proof of other matters as required by the rules of the department without charge to

the worker." Taking these two provisions together, Marshall concludes that "the

provider is prohibited from seeking reimbursement directly from the injured

worker unless and until it is established that the claim is _not_ covered by the state

industrial insurance." ECF No. 131 at 6 (emphasis in original).

The Court is puzzled by Marshall's attempt to utilize almost the exact same

argument previously rejected by the Court on this issue.  As before, the Court finds

that Marshall has completely misunderstood the applicable law.   As previously

held by the Court, in the first sentence of the regulation,

> "acceptance" concerns the health care provider's "acceptance" of the
> Department of Labor and Industries rules and fee schedule when
> participating in the Industrial Insurance Act by treating an injured worker.
> Washington case law supports this interpretation as well, although in
> contextually different litigation.  *See Wash. State Dept. of Labor & Indus. v.
> Kantor*, 94 Wash. App. 764, 773 (Ct. App. 1999); *Dept. of Labor & Indus. v.
> Allen*, 100 Wash. App. 526, 533 (Ct. App. 2000).  These cases make clear
> that this portion of the regulation refers to the provider's "acceptance" of the
> department's rules and fees by providing treatment, not "acceptance" by the
> provider that the medical claim is in fact covered by the self-insurer.

ECF No. 127 at 22.  The additional portion of the regulation cited by Marshall does

not offer any new information relevant to this analysis.  The responsibility of a

provider to inform a worker of his rights and help him apply for compensation is

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 16

completely irrelevant to an analysis of when and how the City of Spokane "accepted" Marshall's medical claim.

Moreover, the Court finds nothing in the regulation or case law [9] cited by Marshall to support his argument that a provider only has a right to bill a patient if the self-insurer "rejected" the industrial injury claim.  ECF No. 131 at 7.  The applicable regulation clearly states that a patient cannot be billed for his "accepted industrial injury," and "acceptance" is defined as "[d]etermination by a qualified representative of the department or self-insurer that reimbursement for the diagnosis and curative or rehabilitative treatment of a claimant's medical condition is the responsibility of the department or self-insurer." Wash. Admin. Code § 296-20-020.  If a provider is immediately barred from seeking payment for any injury until the medical claim is officially "rejected" by the self-insurer, why bother to include the qualifying language that the industrial injury must also be accepted?  Once again, the Court re-states its previous finding that a medical claim is not automatically "accepted" at the time treatment is rendered.

---

[9] Marshall cites to one case, ostensibly to support his argument.  However, the Board of Industrial Insurance Appeals does not analyze "acceptance" of a medical claim by a self-insurer. *In re: Joan M. Weis*, 2009 WL 6268486 (Wash. Bd. Ind. Ins. App. July 22, 2009).  Instead, the holding refers to the provider's "acceptance" of the department's rules and fee schedules.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 17

Next, Marshall relies on documents indicating that on December 17, 2008 the City of Spokane paid Sacred Heart Medical Center for charges related to Marshall's June 19, 2008 injury, to argue that the City of Spokane must have accepted Marshall's medical claim sometime prior to this date.[10]  ECF No. 142-1 at 30.  Further, in a letter dated December 11, 2008 the City of Spokane sent Marshall a letter indicating that a claims specialist was advised of his recent injury and stating that Marshall "should not be billed for any services related to [his] work injury." *Id*. at 12.  Thus, Marshall argues that the claim must have been accepted before December 11, 2008, that any communication between Bonded and Marshall after this date was in violation of WAC 296-20-020.  ECF No. 146 at 4.  Bonded responds that none of these "hearsay" documents contain any communication between Bonded and the City of Spokane, and are therefore irrelevant to deciding

_____

[10] Marshall also makes an extended argument that SEP was "on notice" that Marshall was insured for this injury by the City of Spokane and that SEP was negligent by not questioning Marshall's eligibility for medical coverage.  ECF No. 146 at 2-3. The Court finds this argument unpersuasive.  There is no provision in the applicable regulation, WAC 296-20-020, requiring a provider to investigate or perform any due diligence regarding the acceptance of a medical claim.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 18

whether the claims against Bonded should be dismissed.[11]  Bonded argues that it

had no information from SEP (or Marina) that the claim was accepted before

February 12, 2010, and therefore any communication between Bonded and

Marshall before that date was not a violation of the FDCPA.  ECF No. 145 at 4.

      The crux of the issue before the Court is a determination of when Marshall's

medical claim was "accepted" by the City of Spokane.  As noted by Bonded, the

Court previously found that an L & I claim is not "accepted" at the time treatment

is rendered, however, the Court has never addressed precisely when Marshall's

claim was "accepted."

---

[11] Bonded also argues that this information is not properly before the Court

because the materials were filed on September 19, 2012, almost one month after

briefing on this matter was complete, and six days after the scheduled hearing date.

ECF No. 145 at 2.  Further, Marshall did not officially ask leave of the Court to file

these documents as an untimely supplement to his response to the motion for

summary judgment.  Rather, he filed an expedited "Motion to Seal" with no

reference to the fact that the proffered documents were newly discovered evidence

not previously before the Court.  While the Court agrees with Bonded that

Marshall did not fully disclose that the Motion to Seal included new information,

the Court mitigated any prejudice to Bonded by asking for additional briefing on

the relevance of these documents.  ECF No. 143.

It is an undisputed fact that the City of Spokane sent Marshall a letter on December 11, 2008, indicating that his injury was covered by the industrial insurance law. ECF No. 142-1 at 7. As outlined in the December 11, 2008 letter, the City was responsible for payment of Marshall's medical bills and Marshall was obligated to inform providers of his claim number and where to send their bills. Normally, this would be the date of "acceptance." However, 'acceptance' cannot occur in a vacuum, it must be communicated to interested parties. It is also undisputed on this record that neither SEP, Marina, or Bonded were informed of this acceptance. Indeed, Marina on behalf of SEP, inquired in November 2008 and never received payment or a follow-up communication from the City of Spokane. Perhaps more notably, Marshall himself never communicated his claim number and notice of acceptance to Marina or SEP. On the undisputed facts of this case, absent communication, the City of Spokane's acceptance was not effective as against Marina on behalf of SEP, SEP itself, or its assign, Bonded.[12]

---

[12] The Court rejects Marshall's broad policy argument that medical providers would be allowed to bill every injured worker between the time of treatment and the time of payment, contrary to legislative mandate. The undisputed record here shows SEP promptly billed the City, waited five months, had Marina call as to the status of their claims, and still received no payment for not only months, but years.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 20

Marina and Bonded sent Marshall statements regarding the medical claim that went unanswered by Marshall.  ECF No. 100-2 at Ex. B, C.   Marshall apparently made no response to the many attempts to communicate with him, until September of 2009, when Marshall sent a letter directly to Bonded disputing the claim and indicating that it was an L & I claim that should have been paid by the City of Spokane.  *Id.* at Ex. D.   Significantly, Marshall's letter did not include his claim number, a copy of his "acceptance" letter, or the address for the City of Spokane's Risk Management Office handling his claims.  *Id.*

On this record, the undisputed facts show that that Bonded was **first** informed of the City of Spokane's "acceptance" by reason of the letter dated January 22, 2010.  ECF No. 100-2, Ex. F.   Thereafter, SEP and Marina on behalf of SEP were also **first** informed of the City of Spokane's "acceptance" upon receipt of the January 22, 2010 letter.  Consequently, based on the sequence of undisputed facts, the single communication to Marshall within the FDCPA statute of limitations, that is the service of the state district court matter upon Marshall on January 19, 2010, occurred prior to communication of "acceptance."  Thus, as a matter of law, there is no liability under the FDCPA for this communication.

**B. WCPA and WCAA**

In order to prevail in a WCPA action, a plaintiff must establish five elements, including: "(1) unfair or deceptive act or practice; (2) occurring in trade

or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986). A plaintiff may establish the "unfair or deceptive act" element of a WCPA claim by proving violations of the WCAA, including those claimed by Marshall under RCW 19.16.250. [13]  *See* Wash. Rev. Code § 19.16.440; *see also Moritz v. Daniel N. Gordon, P.C.*, --- F. Supp.2d ---, 2012 WL 3985823 at *10 (W.D. Wash. September 11, 2012).

First, Bonded asserts that Marshall's Consumer Protection Act claims should be dismissed because "the only letter alleged to be sent to Marshall by Bonded was the first notice. The first notice contained the information required by Washington." ECF No. 123 at 14. Bonded contends that the amounts requested were the amounts "due at the time they were requested." Marshall counters that Bonded "was prohibited from billing any amount to the Plaintiff" so even if the

---

[13] In 2011, the legislature re-organized RCW 19.16.250, and while there were no substantive changes to the sub-sections alleged by Marshall, several sub-sections were assigned new numbers. Section (14) can now be found at (15). The former section (15) has become (16). And section (18) is now found at (21). See Wash. Rev. Code § 19.16.250. For the purposes of this motion, the Court will utilize the pre-2011 changes as cited by the parties in their respective briefing.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 22

amounts were correct "they were not due from Plaintiff Marshall."  ECF No. 131 at 15.

The Court has ruled that the medical claim in dispute was "accepted" by the City of Spokane when that acceptance was communicated to SEP, its agent (Marina) and assign (Bonded).  Therefore, as a matter of law, Bonded's billing was lawful at the time it attempted to collect the debt.  However, the evidence before the Court does not show whether the "first notice" included the proper itemization.  *See* § 19.16.250 (8)(c).  That said, Marshall does not put forth a genuine dispute as to the itemization of the bill, but rather only disputes that "any amount" could be billed.  Thus, the Court grants Defendant Bonded's motion for summary judgment on the state law claims, as it was permissible under law to bill Marshall until the City of Spokane communicated its acceptance of the claims.[14]

SEP contends that since its billing was permissible, there is no violation of the WCPA.  Marshall's case and each of his causes of action are predicated on the theory that he could not be lawfully billed.  As indicated above, until "acceptance" is communicated to medical providers, it is not unlawful to bill the injured patient.  Therefore, the Court grants Defendant SEP's motion for summary judgment on the WCPA and WCCA claims.

---

[14] In light of this ruling, the Court finds it unnecessary to rule on Bonded's contention that Marshall sustained no actual damages. *See* ECF No. 145 at 6.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 23

Even viewing the evidence in the light most favorable to Marshall, the undisputed material facts show there was no violation of WAC 296-20-020 by attempting to collect from a City of Spokane worker on medical bills for services rendered until their acceptance is communicated to medical providers and their assigns, and thus, all claims fail.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant Bonded Adjustment Company's Motion for Summary Judgment, ECF No. 122, is **GRANTED**.

2.  Defendant Spokane Emergency Physicians, P.S.'s Motion for Summary Judgment, ECF No. 147, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and Judgment accordingly, provide copies to counsel, and CLOSE the file.

**DATED** this 12th day of December, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 24